UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAIRO FERNANDO HUETE-
ALVAREZ,

        Petitioner,

        v.

U.S. ATTY GENERAL PAM
BONDI, FIELD OFF. DIRECTOR
GARRETT J RIPA, TODD LYONS,
SECRETARY KRISTI NOEM,
SDFL US ATTORNEY'S OFFICE,

        Respondents.

Case No. 2:26-cv-600-KCD-NPM

_____/

## <u>ORDER</u>

Petitioner Jairo Fernando Huete-Alvarez, a Honduran citizen, has lived in the United States since 2014. For the last seven years, he has been free on an order of supervision—a kind of immigration parole where he checks in periodically but otherwise lives his life. That changed on February 12, 2026, when the Government revoked Huete-Alvarez's supervision and took him back into custody. He has now filed a habeas corpus petition to challenge that confinement and seeking release. (Doc. 1.)[1] For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Huete-Alvarez illegally entered the United States in 2014. (Doc. 21-1 at 2.) He was removed but crossed the border again in 2019. (Doc. 1 at 10.) Immigration and Customs Enforcement ("ICE") apprehended Huete-Alvarez, reinstated his removal order, but then released him on an order of supervision. (Docs. 1-3 at 2; 1-4 at 2; 1-5 at 2.)

In 2019, Huete-Alvarez sought to stay removal until a reasonable fear interview could occur. (Docs. 1 at 11; 1-9 at 2.) The request was granted, and he is awaiting that process. (Doc. 1 ¶ 10, 57.) In the meantime, on February 12, 2026, Huete-Alvarez reported for a supervision appointment and ICE revoked the supervision order to execute his removal order. (Doc. 21-2 at 3-4.) That same day, ICE provided Huete-Alvarez with a Notice of Revocation of Release and offered him an informal interview to contest the detention. (Ex. 2 at 1-4).

Huete-Alvarez mounts a multi-pronged attack. First, he argues that the Government violated the Fifth Amendment's Due Process Clause by continuing to detain him and revoking his liberty without prior notice, an explanation, or a meaningful opportunity to be heard. Second, he invokes the Administrative Procedures Act ("APA"). Third, he brings an ultra vires claim, arguing that no law authorizes his detention and asks the Court to step in. Finally, he brings a claim under the *Accardi* doctrine, contending that his

detention is unlawful because ICE completely ignored its own binding regulations governing the revocation of release. (*See* Doc. 1.)

The Government contends that it did exactly what the law permits. (Doc. 21.) By revoking Huete-Alvarez's release to enforce a final removal order, the agency satisfied both its own regulations and the Constitution's due process demands. (*Id.*) For the reasons below, Huete-Alvarez has failed to show that his return to custody is unlawful. His habeas petition thus fails.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

### A. Jurisdiction

The analysis begins with a jurisdictional challenge. Respondents halfheartedly argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to

3

even hear Huete-Alvarez's plea because it arises from the "execution" of a removal order. (Doc. 21 at 3.) We need not spend long here. The Supreme Court has repeatedly cautioned that § 1252(g) is narrowly tailored to three discrete actions, and it does not operate as a blanket ban on habeas review for prolonged detention. *See Jennings v. Rodriguez,* 138 S. Ct. 830, 841 (2018). Indeed, if the Government's sweeping interpretation were correct, *Zadvydas v. Davis,* 522 U.S. 678 (2001)—the seminal case where the Supreme Court held it could consider a habeas challenge to unlawful, prolonged immigration detention—would have been stopped in its tracks before ever reaching the merits. The Court is satisfied it has jurisdiction to decide whether Huete-Alvarez's detention is lawful. *Zadvydas,* 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

Respondents also claim that 8 U.S.C. § 1252(b)(9) bars judicial review. (Doc. 21 at 3.) Not so. The Eleventh Circuit has held that § 1252(b)(9) "only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.,* 964 F.3d 1250, 1257 (11th Cir. 2020). Huete-Alvarez is not challenging his removal proceedings—he is challenging the antecedent detention. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v.*

4

*U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at \*5 (S.D. Fla. Apr. 15, 2021). Huete-Alvarez's substantive claims are addressed in turn below.

### B. *Zadvydas*

Huete-Alvarez first claims that he is being held in violation of the Fifth Amendment. (Doc. 1 at 17.)  In *Zadvydas v. Davis*, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns and can violate the Fifth Amendment. 533 U.S. 678 (2001). Once an order of removal is final, the *Zadvydas* Court explained, ICE should make every effort to remove the alien within a reasonable time. *Id.* at 701. Further, the Court concluded that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good

5

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Huete-Alvarez's petition is premature because he has not been detained for longer than six months. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any substantive due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at \*8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at \*12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at \*4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Huete-Alvarez also seems to claim that the Government's decision to revoke his supervision and return him to custody is a separate substantive due process violation. (Doc. 1 at 17-18.) But that argument rests on a faulty premise. There is no substantive right to remain free on an order of supervision. Release on an order of supervision is a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement. Huete-Alvarez assumes that as long as he complies with his conditions and stays out of trouble, the Government's hands are tied. (*Id.*) But as explained below, that is not correct. The core purpose of post-removal-order detention is

6

to effectuate the removal order. When the Government determines that circumstances have changed—like charting a new path to removal—it has the statutory and regulatory authority to revoke a noncitizen's supervision and finish the job, regardless of his prior compliance. *See* 8 C.F.R. §§ 241.4(l), 241.13(i).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Huete-Alvarez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the Government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, ICE revoked Huete-Alvarez's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

### C. Procedural Due Process

Huete-Alvarez next presses a procedural due process claim. (Doc. 1 at 6.) He argues that he did not violate his supervision, so ICE could not revoke his release, and he did not receive notice and an interview when ICE detained him.

For starters, it's not entirely clear that Huete-Alvarez is entitled to a freestanding due process analysis at this time. When the Supreme Court confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is

8

presumptively reasonable. *Zadvydas*, 533 U.S. at 701. So until that timer goes off, *Zadvydas* itself seemingly supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). Because Huete-Alvarez's detention is barely out of the starting gate, he is presumably not yet entitled to anything more.

But even if we assume the due process clause applies with full force, Huete-Alvarez still comes up empty. At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). Huete-Alvarez received both. (*See* Doc. 21-2 at 2-4.) He got exactly what the Fifth Amendment requires—fair notice and a

9

meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Huete-Alvarez's argument that his clean supervision record precludes ICE from revoking his supervision also fails. He is subject to a final removal order. As explained, the INA explicitly authorizes a return to detention to effectuate such orders. *See* 8 C.F.R. § 241.13(i)(2). The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Huete-Alvarez the requisite notice and a meaningful opportunity to be heard, his procedural due process claim fails.

### D. Administrative Procedure Act

Huete-Alvarez brings two claims under the APA. The difficulty here is twofold. First, he has alleged these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot

10

sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at \*7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for such claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Huete-Alvarez has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Huete-Alvarez is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at \*3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at \*7 (D.N.M. Feb. 11, 2026).

### E. Ultra Vires Action

Huete-Alvarez tacks on a claim for "ultra vires action." (Doc. 1 at 25.) He declares that no law authorizes his detention and asks the Court to step in. But he offers no facts, cites no law, and provides no analysis to explain

11

why ICE's actions supposedly fall outside its statutory authority. A petitioner cannot just drop a legal label on the table and expect the dots to connect themselves. In our adversarial system, a party has to do the heavy lifting of framing the issues for decision. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022). The Court will not do that work for him, and so this claim is also rejected.

### F. *Accardi* Doctrine

Huete-Alvarez does not rely on the Constitution alone. He lastly brings a claim under the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The premise of that doctrine is straightforward: "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). And it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Because it appears the Government previously released Huete-Alvarez after determining that there was no significant likelihood of his removal (Doc. 21-2), the regulation governing his return to custody here is 8 C.F.R. § 241.13(i). *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3

12

(W.D. Ky. Feb. 6, 2026). It provides the precise steps ICE must take before re-arresting someone based on a renewed likelihood of removal. *Id.* § 241.13(i).

Huete-Alvarez claims that ICE ignored those mandatory procedures entirely. He allegedly "revoked Petitioner's order without advance notice." (Doc. 1 ¶ 137.) Under *Accardi,* he concludes, that complete regulatory bypass renders his ongoing detention legally defective and unlawful.

Huete-Alvarez's contention that he received no written notice is a nonstarter. When officers took him into custody, he was provided a Notice of Revocation of Release. (Doc. 21-2 at 3-4.) And this piece of paper told him exactly why he was losing his liberty: ICE has the ability and means to effectuate his removal and is seeking a travel document to effect his removal. (*Id.* at 3.) That is a written explanation. It may not have been the extensive memorandum Huete-Alvarez would have preferred, but it was more than enough to put him on notice of the Government's basic rationale for bringing him back into custody. Nothing more was needed to satisfy § 241.13(i). *See Tran v. Warden, S. Side Det. Ctr.,* No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *8-9 (M.D. Fla. Mar. 10, 2026).

Turning next to Huete-Alvarez's claim that the notice had no finding of a violation, that argument misses the mark for a different reason. (Doc. 1 ¶ 78.) He seemingly insists that ICE could not revoke his supervision because he never broke the rules. But the applicable regulation simply does not

13

require a rulebook infraction to haul someone back into custody. Under 8 C.F.R. § 241.13(i)(2), the government can revoke release based on changed circumstances alone—specifically, when there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id*. Playing by the rules is commendable, but it does not buy a noncitizen permanent immunity from a final, executable deportation order.

Huete-Alvarez similarly complains that the Government "did not make findings that Petitioner is dangerous or unlikely to comply with a removal order" before revoking his supervision. (Doc. 1 ¶ 98-99.) If he means ICE was required to provide process *before* putting him in handcuffs, he is misreading the text. Section 241.13(i) does not mandate a pre-deprivation process. It allows the agency to revoke a release order and detain an individual based on changed circumstances without first convening a panel or holding a hearing. *See* 8 C.F.R. § 241.13(i)(3) ("The Service will conduct an initial informal interview promptly *after* his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." (emphasis added).) A writ of habeas corpus is a forward-looking remedy intended to secure release from unlawful custody; it is not a vehicle for redressing past procedural errors that no longer affect the current lawfulness of a petitioner's detention. *See, e.g.*, *Zhen v. Doe*, No. 3:25-CV-01507-PAB, 2025 WL 2258586, at *10 (N.D. Ohio Aug. 7, 2025).

14

Huete-Alvarez lastly complains that Respondents failed to provide a revocation order signed by someone with regulatory authority to do so. (Doc. 1 ¶ 136.) He insists this technicality voids the entire revocation. *See* 8 C.F.R. § 241.4(l)(2); *cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area.").

This argument fails. Huete-Alvarez was originally released back in 2019 because his removal to Honduras was not reasonably foreseeable. That puts his case on a different regulatory track, one governed by 8 C.F.R. § 241.13. When the Government decides it is time to again detain someone on that specific track, it must follow the revocation procedures from § 241.13. *See Choy*, 2026 WL 324601, at *3. Section 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials. It simply says the agency can revoke an order of supervision if changed circumstances mean removal is now significantly likely. Huete-Alvarez never identifies how the Government failed to comply with the regulations or who should have signed the revocation notice. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove

15

all facts necessary to show a constitutional violation."). Huete-Alvarez has not shown an *Accardi* violation.

One final issue. Huete-Alvarez spends pages arguing that the Government cannot remove him under 8 C.F.R. § 241.8(e) until the reasonable fear process is complete. (Doc. 1 ¶ 10.) The Government does not dispute that. And Huete-Alvarez makes no showing that his pending reasonable fear interview precludes his detention. Huete-Alvarez could possibly seek refuge in *Zadvydas* if he is detained for more than 6 months. But for now, the reasonable fear process does not preclude his detention. *See, e.g., Castaneda v. Perry*, 95 F.4th 750, 757-58 (4th Cir. 2024) ("Stated differently, ongoing withholdingonly proceedings do not, standing alone, cast doubt on the foreseeability of an alien's removal in the future.").

## IV. Conclusion

Huete-Alvarez's legal challenge to the length of his detention is premature, and his other claims fail on the merits, so the habeas petition must be **DENIED**. However, this denial is without prejudice to Huete-Alvarez refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on April 23, 2026.

Kyle C. Dudek
United States District Judge